NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANETH CADAVID,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　Defendant. | Civil Action No. 12-07214 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

Before the Court is Plaintiff Janeth Cadavid ("Plaintiff")'s appeal on behalf of her minor child, M.C. ("Claimant"), seeking review of a final determination by Administrative Law Judge ("ALJ") Richard West denying her application for Supplemental Security Income ("SSI") benefits. The Court resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). For the reasons set forth below, the Court remands the final decision of the Commissioner of Social Security.

**I.　BACKGROUND**

　　A.　Claimant's Medical and Educational Records

Claimant was born on November 26, 1996, and suffers from a learning disability, mood disorder, and intermittent explosive disorder. (R. at 197, 367).[1] According to Plaintiff, the existence of Claimant's learning disability first became clear around 2005. (*Id.* at 53).

---

[1] "R." refers to the pages of the Administrative Record.

A January 2005 educational assessment prepared by Jessie Cochran, a learning disabilities teacher consultant, corroborates Plaintiff's testimony. (*Id.* at 97-101). At that time, Claimant was eight years old and in the second grade. (*Id.* at 97). Plaintiff noted that Claimant did not want to study or do anything while at home, and that she had to beg him to work. (*Id.* at 98). According to Claimant's second grade teacher, Claimant did not retain information, worked more slowly than others, rarely raised his hand in class, could be disruptive in class, was generally shy and withdrawn, and suffered academically. (*Id.* at 97). In her assessment, Cochran observed that Claimant did not appear to pay attention to his second grade teacher. (*Id.* at 98). For example, when Claimant's second grade teacher asked Claimant and his classmates to remove a sheet of paper from their desks, Claimant did not do so. (*Id.*). Instead, Claimant talked to his neighbor. (*Id.*). Cochran administered the Woodcock-Johnson Pyscho-Educational Battery 111 to Claimant, a comprehensive set of tests for measuring scholastic aptitudes and achievement. (*Id.* at 99). Claimant scored in the very low range for his age in reading, the low average range for his age in writing, and the average range for his age in mathematics and academic knowledge. (*Id.* at 99-101). Overall, Claimant scored in the low average range for total achievement. (*Id.* at 99).

In February 2005, Zenaida Arvelo, a school social worker, examined Claimant, preparing a social evaluation report and speech and language report. (*Id.* at 93-96, 327-29). The speech and language report revealed that Claimant had difficulty reading and retaining information, worked very slowly, required extra time to complete assignments and tests, could not focus, and required one-on-one assistance to complete class work. (*Id.* at 327-29). Both reports commented that although Claimant was described as happy and friendly, he could be aggressive towards Plaintiff—he struck her when upset—and explosive at times. (*Id.* at 94, 328-29). Both

2

reports also commented that Plaintiff had a very serious character and could be both stubborn and temperamental. (*Id.* at 94, 329). According to both reports, while Claimant was respectful of adult authority, he tended to resist discipline. (*Id.*). To improve Claimant's academic performance, both reports recommended placing Claimant in a small class environment where he could receive one-on-one in class support. (*Id.* at 95, 328).

Also in February 2005, Diane Peneno, a certified school psychologist, conducted a psychological assessment of Claimant. (*Id.* at 67-74). While conducting the assessment, Peneno observed that Claimant was polite, initiated some conversation, appeared to process information slowly, and did not display any emotion—he appeared to have a flat affect and did not smile. (*Id.* at 67-68). The assessment included the administration of the Wechsler Intelligence Scale for Children – Fourth Edition ("WISC-IV"), an intelligence test used to assess the general thinking and reasoning skills of children aged six to sixteen years. (*Id.* at 68-71). The WISC-IV provides scores in four areas—(1) verbal comprehension, (2) perceptual reasoning, (3) working memory, and (4) processing—as well as a full-scale IQ ("FSIQ") score. (*Id.* at 68). According to the WISC-IV, Claimant's verbal comprehension and perceptual reasoning scores were in the average range. (*Id.* at 68-70). However, Claimant's working memory score—a measurement of Claimant's attention, concentration, and mental reasoning skills—was in the borderline range and his processing speed score was in the low average range. (*Id.* at 68, 70). Claimant's FSIQ score, a 91, suggested that Claimant's general cognitive ability was within the average range of intellectual functioning. (*Id.* at 68).

When Claimant entered the sixth grade in September 2008, his school prepared an Individualized Education Program ("IEP") for him. (*See id.* at 281-316). Claimant's sixth grade IEP noted that Claimant then functioned at the second grade level in language arts and at the

3

fourth grade level in math, science, and social studies. (*Id.* at 286, 288). With regard to Claimant's ability to read, the IEP noted that Claimant had lost his motivation to read, only read books with illustrations, and struggled with unfamiliar words. (*Id.* at 286-87). Not only had Claimant lost his motivation to read, according to the IEP, but he had also lost his motivation to complete his homework and class assignments. (*Id.* at 287). However, the IEP noted that Claimant had increased motivation when he received one-on-one instruction or worked with his peers. (*Id.* at 288). The IEP further noted that Claimant could be defiant and stubborn, had trouble responding to authority, and demonstrated inappropriate behavior. (*Id.* at 287, 289).

To enable Claimant to participate in the general education curriculum, Claimant's sixth grade IEP granted Claimant frequent breaks, preferential seating, and additional time to process information and complete assignments and tests. (*Id.* at 283, 312). Additionally, the IEP noted that directions and instructions should be clarified, repeated, and reworded when delivered to Claimant. (*Id.*). The IEP granted these special accommodations to Claimant along with others in math, science, language arts, and social studies. (*Id.* at 312).

In October 2008, Dr. Maria Padron conducted a psychiatric evaluation of Claimant at Trinitas Hospital in Elizabeth, New Jersey. (*Id.* at 354-61). Claimant was referred to Trinitas by his pediatrician, Dr. Lozano, because of his aggressive behavior—shortly before the evaluation, Claimant fought with a peer. (*Id.* at 354, 259). Claimant's teacher prepared a questionnaire prior to the evaluation. (*Id.* at 356-57). The questionnaire noted that Claimant had a peculiar way of relating to others, tended not to make good eye contact, had significant language problems, had some excessive preoccupations, and got upset over small changes in routine. (*Id.* at 357). The questionnaire also noted that Claimant exhibited multiple signs of ADHD and some signs of impulsivity. (*Id.*).

4

At the time of intake, Dr. Padron noted that Claimant did not make eye contact and was angry. (*Id.* at 358). She found that Claimant had poor impulse control and moderately impaired judgment. (*Id.* at 359). She assigned Claimant a Global Assessment of Functioning ("GAF") score of sixty,[2] and diagnosed Claimant with the following: Impulse Control Disorder, Learning Disability – not otherwise specified, and Speech Articulation Disorder. (*Id.* at 360). In doing so, Dr. Padron ruled out Mood Disorder. (*Id.*). Dr. Padron recommended that Claimant take Trileptal to treat his impulsivity. (*Id.*). She later recommended that Claimant take Abilify to treat his irritability and doubled his dosage of Trileptal. (*Id.* at 360-61). Plaintiff subsequently informed Dr. Padron that Claimant was listening better and was less angry. (*Id.* at 361).

While treating Claimant from November 2008 to January 2010, Dr. Pardon prepared Psychiatric Drug Management Notes. (*Id.* at 404-19). In February 2009, Dr. Padron noted that Claimant had not improved as expected, and, as a result, increased his dosage of Abilify. (*Id.* at 407). The following month, Dr. Padron noted that Claimant had one episode of aggressive behavior towards a relative, and rated Claimant's aggression as an eight out of ten. (*Id.* at 408). In April 2009, Dr. Padron prescribed Claimant Cogentin and again increased Claimant's dosage of Abilify. (*Id.* at 409). In May 2009, Dr. Padron found that Claimant was doing much better, and that he had no aggressive behavior. (*Id.* at 411). However, in September 2009, Dr. Padron noted that although she had received no complaints from Claimant's school, he was still angry. (*Id.* at 415).

---

[2] The GAF Scale ranges from zero to one-hundred. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) (hereinafter, "DSM-IV-TR"). An individual's "GAF rating is within a particular decile if *either* the symptom severity or the level of functioning falls within the range." *Id.* at 32. "[I]n situations where the individual's symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two." *Id.* at 33. "In most instances, ratings on the GAF Scale should be for the current period (*i.e.*, the level of functioning at the time of the evaluation) because ratings of current functioning will generally reflect the need for treatment or care." *Id.* A GAF rating of fifty-one to sixty indicates that an individual has "[m]oderate symptoms," *e.g.*, "flat affect and circumstantial speech, [or] occasional panic attacks," or "moderate difficulty in social, occupational, or school functioning," *e.g.*, "few friends, conflicts with peers . . . ." *Id.* at 34.

That same month, when Claimant was in the seventh grade, Dr. Ernesto L. Perdomo performed a consultative psychological evaluation of Claimant. (*Id.* at 364-67). Plaintiff told Dr. Perdomo that Claimant was very aggressive, threw things, fought a lot, had severe mood swings, was depressed, and locked himself in his bedroom to be left alone. (*Id.* at 264). Nonetheless, Dr. Perdomo observed that Claimant was sociable, calm, and cooperative throughout the evaluation. (*Id.* at 366). With regard to Claimant's functional capacity, Dr. Perdomo noted that Claimant had difficulty reading—Claimant was unable to read a letter during the examination—and attended special education full time. (*Id.*). Yet, Dr. Perdomo noted that Claimant was able to understand and follow directions of moderate complexity, for example, a four-step instruction. (*Id.*). Dr. Perdomo diagnosed Claimant with the following: Mood Disorder – not otherwise specified, Possible Bipolar Disorder – Type II depressed, and Intermittent Explosive Disorder. (*Id.* at 367). Additionally, Dr. Perdomo assigned Claimant a GAF score of fifty, indicating significant symptoms affecting school and social functioning. (*Id.*).

In Claimant's eighth grade IEP, his seventh grade teachers generally found that Claimant had good peer relationships. (*See id.* at 106, 108-10). However, Claimant's language arts teacher noted that his enjoyment of socializing sometimes distracted him from his work. (*Id.* at 106). While Claimant's math and science teachers observed that Claimant was motivated to succeed, his language arts and social studies teachers observed the opposite. (*Id.* at 107-10). Indeed, Claimant's language arts teacher noted that he required constant reinforcement to complete his work. (*Id.* at 107). Moreover, Claimant's science teacher noted that Claimant failed to complete his homework and classwork. (*Id.* at 110). Claimant's eighth grade IEP, like

6

his sixth grade IEP, granted Claimant various test accommodations/modifications and scheduling accommodations. (*Id.* at 130).

Claimant's ninth grade IEP, conducted in March 2011, indicated that Claimant did not typically participate in language arts. (*Id.* at 247). In math, Claimant's participation was limited, his test and quiz grades were below average, and he often did not complete his homework. (*Id.* at 248). The IEP again granted Claimant test accommodations/modifications and scheduling accommodations. (*Id.* at 266).

A March 2011 interim report, reviewing Claimant's academic progress, stated that Claimant missed homework and was unprepared for English. (*Id.* at 276). Thereafter, a May 2011 interim report stated that Claimant missed homework, did not prepare for class, exhibited inappropriate or disruptive behavior, and produced unsatisfactory classwork in Science. (*Id.* at 278).

B.  Procedural History

On February 3, 2009, Plaintiff filed an application for SSI on behalf of Claimant with the Social Security Administration. (*Id.* at 31). The Administration denied Plaintiff's application and subsequent request for reconsideration. (*Id.* at 138, 144). Thereafter, on May 20, 2010, Plaintiff filed a request for a hearing before an ALJ with the Office of Disability Adjudication and Review. (*Id.* at 149).

ALJ West presided over this hearing on May 27, 2011, in Newark, New Jersey. (*Id.* at 47). After reviewing the facts of Claimant's case, on August 19, 2011, ALJ West issued a decision finding that Claimant was not disabled from the date that Plaintiff filed Claimant's application through the date of decision.[3] (*Id.* at 31-41).

---

[3] Supplemental Security Income benefits are not payable for any month prior to the month after the application for such benefits is filed. 20 C.F.R. § 416.335.

Following ALJ West's determination, Plaintiff sought Appeals Council review. (*Id.* at 18). The Appeals Council denied Plaintiff's request on September 21, 2012, rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 1). Plaintiff subsequently appealed to this Court on November 20, 2012. (ECF No. 1). This Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g).

## II. LEGAL STANDARD

### A. The Three-Step Process for Evaluating Whether a Child is Disabled

Under the Social Security Act, the Social Security Administration is authorized to pay supplemental security income to "disabled" persons. 42 U.S.C. § 1382(a). A child, *i.e.*, "[a]n individual under the age of 18," is "disabled" if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

Regulations promulgated under the Social Security Act establish a three-step process for determining whether a child is disabled. 20 C.F.R. § 416.924. At step one, the ALJ assesses whether the child is currently engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). If so, the child is not disabled and, thus, the process ends. *Id.* If not, the ALJ proceeds to step two and determines whether the child suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). Absent such an impairment or combination of impairments, the child is not disabled. *Id.* Conversely, if the child has such an impairment or combination of impairments, the ALJ proceeds to step three. 20 C.F.R. § 416.924(a).

At step three, the ALJ determines whether the child has an impairment or combination of impairments that meets, medically equals, or functionally equals a listed impairment in the

8

appendix. 20 C.F.R. § 416.924(d). An impairment or combination of impairments "medically equals" a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). An impairment or combination of impairments "functionally equals" a listed impairment if the child has either two "marked" limitations or one "extreme" limitation in the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; or (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A limitation is "marked" if it "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). Such a limitation is " 'more than moderate' but 'less than extreme.' " *Id.* A limitation is "extreme" if it "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). While an extreme limitation is "more than marked," it is not necessarily the equivalent of "a total lack or loss of ability to function." *Id.* In assessing whether an impairment or combination of impairments "functionally equals" a listed impairment, the ALJ considers "all the relevant factors," including the effectiveness of the child's medication, the child's ability to function in school, and the effects of structured settings on the child's performance. 20 C.F.R. § 416.926a(a)(1)-(3). If the child has an impairment that meets, medically equals, or functionally equals a listed impairment, the child is considered disabled under the Social Security Act. 20 C.F.R. § 416.924(d)(1).

B. <u>The Standard of Review: "Substantial Evidence"</u>[4]

This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means

---

[4] Because the regulations governing supplemental security income—20 C.F.R. § 416.920—are identical to those covering disability insurance benefits—20 C.F.R. § 404.1520—this Court will consider case law developed under both regimes. *Rutherford v. Barnhart*, 399 F.3d 546, 551 n. 1 (3d Cir. 2005) (citation omitted).

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Consequently, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

### III.   DISCUSSION

After applying the three-step process, the ALJ determined that Claimant had not been disabled from the date that Plaintiff filed Claimant's application through the date of decision. (R. at 41). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity. (*Id.* at 34). At step two, the ALJ found that Claimant's learning disability, mood disorder, and intermittent explosive disorder were severe impairments. (*Id.* at 34). At step three, the ALJ determined that these severe impairments did not meet, medically equal, or functionally equal a listed impairment. (*Id.* at 34-41). With regard to functional equivalence, the ALJ found that Claimant suffered from a marked limitation in the domain of acquiring and using information. (*Id.* at 36). However, the ALJ found that Claimant did not suffer from a marked limitation in the other five domains. (*Id.* at 37, 38).

The crux of Plaintiff's appeal to this Court is that the ALJ's step three functional equivalence finding is not based on substantial evidence because he failed to explain why he discounted key probative evidence. This probative evidence, according to Plaintiff, suggests that

Claimant suffers from a marked limitation in the following domains: (1) attending and completing tasks; and (2) interacting and relating with others. (*Id.* at 21-31).

In *Cotter v. Harris*, the Third Circuit held that an ALJ should provide "a clear and satisfactory explication of the basis on which [his decision] rests." 642 F.2d 700, 704 (3d Cir. 1981). In doing so, "an ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008) (citation omitted); *Cotter*, 642 F.2d at 706-07 ("[A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") The Court now assesses whether the ALJ adequately explained his reasons for rejecting pertinent or probative evidence in finding that Claimant has a less than marked limitation in the following domains: (1) attending and completing tasks; and (2) interacting and relating with others. (Pl. Br. 21-23, ECF No. 18).

> A. *Whether the ALJ Adequately Explained His Reasons For Discounting Probative Evidence in Finding That Claimant Has a Less Than Marked Limitation in Attending and Completing Tasks*

Plaintiff contends that the ALJ did not adequately explain why he discounted key probative evidence in finding that Claimant has a less than marked limitation in attending and completing tasks. (Pl. Br. 21-26). When assessing the domain of attending and completing tasks, an ALJ must "consider a child's ability to focus and maintain attention, and to begin, carry through, and finish activities or tasks." S.S.R. 09-4p. In addition, the ALJ must "consider the child's ability to change focus after completing a task and to avoid impulsive thinking and acting." *Id.* The ALJ also is to "evaluate a child's ability to organize, plan ahead, prioritize completing tasks, and manage time." *Id.*

11

Here, the ALJ took note of the following probative evidence in finding that Claimant has a less than marked limitation in attending and completing tasks. First, the ALJ noted that although Claimant exhibits reduced concentration, he has not been diagnosed with ADHD. (R. at 37). Second, the ALJ noted that Claimant's problems in this domain appeared to be related to poor motivation and behavioral problems rather than any specific cognitive inability to complete tasks. (*Id.*). Third, the ALJ noted that according to Claimant's teachers, Claimant is able to complete his assignments without difficulty when he receives one-on-one assistance or works with a group. (*Id.*). Lastly, the ALJ noted that school examiners and consultative examiners found Claimant able to follow directions and stay on task. (*Id.*).

Again, Plaintiff argues that the ALJ failed to adequately explain why he discounted probative evidence demonstrating that Claimant has a marked limitation in attending and completing tasks. (Pl. Br. 21-26). According to Plaintiff, such probative evidence includes Peneno's 2005 psychological assessment, Dr. Padron's October 2008 psychiatric evaluation, and Claimant's sixth, eighth, and ninth grade IEPs. (*Id.* at 22-26). Notably, the IEPs granted Claimant special accommodations, including extra time and specialized instruction, to complete tasks. (*Id.* at 24-25). Defendant counters that the ALJ's decision is supported by substantial evidence because the ALJ noted that Claimant was not diagnosed with ADHD, and referred to reports from his teachers and school examiners supporting his conclusion. (Def. Br. 6, ECF No. 21). Defendant's argument is unavailing.

The ALJ's discussion of the evidence in support of his conclusion that Claimant has a less than marked limitation in attending and completing tasks is cursory at best. (*See* R. at 37). In support of his finding that school examiners and consultative examiners found that Claimant is able to follow directions and stay on task, the ALJ cites to Claimant's sixth grade IEP and Dr.

Perdomo's psychological evaluation. (*See id.*). However, the ALJ does not reconcile this finding with pertinent evidence contained in Claimant's other IEPs and Dr. Padron's psychiatric evaluation. (*See id.*). For instance, the ALJ does not provide any clear indication that he rejected evidence contained in Claimant's eighth grade IEP that Claimant required constant reinforcement to complete tasks and special testing accommodations. (*See id.* at 37, 106-07). Such a limited analysis prevents this Court from determining whether probative evidence was credited and rejected or whether such evidence was simply ignored. *See Cotter*, 642 F.2d at 705 (noting that the ALJ must provide "some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored"); *see also Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (stressing the need for ALJs to sufficiently develop the record and explain their findings to permit meaningful judicial review); *see also Solis v. Astrue*, CIV.A. 09-2032 DMC, 2011 WL 2609864 at *11 (D.N.J. June 30, 2011) (remanding the ALJ's decision for further explanation because while the ALJ "properly discussed evidence supporting a finding that [Claimant] ha[d] a less than marked limitation" the ALJ failed to discuss evidence in the record that contradicted his finding.). As such this Court remands the ALJ's finding that Claimant suffers from a less than marked limitation in the domain of attending and completing tasks. On remand, the ALJ must explain his findings.

      B.    *Whether the ALJ Adequately Explained His Reasons for Discounting Probative Evidence in Finding That Claimant Has a Less Than Marked Limitation in Interacting and Relating With Others*

Plaintiff contends that the ALJ did not adequately explain why he discounted key probative evidence in finding that Claimant has a less than marked limitation in interacting and relating with others. (Pl. Br. 26-31). The domain of interacting and relating with others focuses

13

on "a child's ability to initiate and respond to exchanges with other people, and to form and sustain relationships with family members, friends, and others." S.S.R. 09-5p. "Important aspects" of this domain include "the child's response to persons in authority, compliance with rules, and regard for the possessions of others." *Id.* Further, ALJs consider in this domain "the speech and language skills children need to speak intelligibly and to understand and use the language of their community." *Id.*

Here, the ALJ determined that Claimant has a less than marked limitation in interacting and relating with others. (R. at 38-39). In reaching his decision, the ALJ stressed that in spite of Claimant's behavioral problems, which the ALJ acknowledged clearly exist, Claimant has responded to treatment and is generally cooperative. (*Id.*). The ALJ's discussion highlighted the following probative evidence.

The ALJ began by noting that in November 2008, Claimant's treating physician referred him to a psychiatrist for treatment following a report of aggressive behavior by Plaintiff. (*Id.* at 38). The ALJ then noted that Claimant was diagnosed with impulse control disorder and prescribed medication and therapy. (*Id.*). This treatment, as noted by the ALJ, resulted in an almost immediate improvement. (*Id.*). Specifically, the ALJ noted that Plaintiff had reported that Claimant's instances of angry outbursts stopped, and that Claimant was less angry and was listening more. (*Id.*). Additionally, the ALJ noted that Plaintiff had related that Claimant's school was no longer calling regarding his behavior. (*Id.*). Next, the ALJ noted that school records indicated that Claimant had made progress, but also regressed somewhat in 2010, and was showing poor motivation and disrespect towards authority. (*Id.* at 39). The ALJ also noted that Claimant's teacher had reported that he had difficulty maintaining attention and failed to complete his work, unless he worked in a group or received one-on-one help from an instructor.

(*Id.*). Further, the ALJ noted that Claimant was felt to be capable of the work and that in classes he enjoyed he participated and volunteered to read aloud and provide help to others. (*Id.*). The ALJ also acknowledged that Claimant had friends with whom he got along. (*Id.*). Finally, the ALJ opined that many of Plaintiff's complaints about Claimant appeared to be normal behaviors of a teenager. (*Id.*).

Again, "an ALJ may not reject pertinent or probative evidence without explanation." *Johnson*, 529 F.3d at 204. According to Plaintiff, in this case, such probative evidence includes: Arvelo's February 2005 social evaluation report; Claimant's sixth and eighth grade IEPs; and Dr. Pardon's Psychiatric Drug Management Notes from February, March, April, and May 2009. (*Id.* at 28-31). Plaintiff claims that this evidence is probative because it serves to establish that Claimant has failed to: (1) relate appropriately to children and adults either individually or in groups; (2) resolve conflicts between himself and others outside of his family; and (3) recognize that there are different social rules for various social relationships. (Pl. Br. 32). In response, Defendant argues that the ALJ's decision that Claimant suffers from a less than marked limitation in this domain is supported by substantial evidence, including evidence that Claimant had responded to treatment and was able to make friends in spite of his behavioral problem. (Def. Br. 9).

It remains unclear to this Court from the ALJ's discussion whether the ALJ considered or simply ignored the probative evidence highlighted by Plaintiff. For instance, while the ALJ provides some discussion of the IEPs, he fails to mention some of the statements made therein that contradict his findings. Ultimately, this Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705. Thus, the Court remands the ALJ's

finding that Claimant suffers from a less than marked limitation in the domain of interacting and relating with others. *See e.g. Abreu ex rel. A.M. v. Comm'r of Soc. Sec.*, 2:11-CV-04942-SDW, 2012 WL 3927061 at *8 (D.N.J. Sept. 6, 2012) (remanding the ALJ's step three functional equivalence determination for further clarification where the ALJ did not "provide an explanation as to the basis for his decision that [evidence in the record]. . . only constitutes a less than marked limitation"). The Court directs the ALJ to explain his findings on remand.

## IV.  CONCLUSION

The Court has reviewed the entire record and, for the reasons discussed above, finds that the ALJ's determination that Claimant was not disabled was not supported by substantial evidence. Accordingly, the Court remands the ALJ's decision, directing the ALJ to fully explain his functional equivalence findings pertaining to (1) attending and completing tasks and (2) interacting and relating with others at step three. An appropriate Order accompanies this Opinion.

_____
JOSE L. LINARES
U.S. DISTRICT JUDGE

DATED: February 26, 2014